Opinion by
Head, J.,
In 1904 the defendant borough enacted an ordinance-conferring upon the plaintiff company the right to enter' upon its streets.and alleys “for the purpose of constructing, operating and maintaining lines of telegraph and telephone through the said borough,” etc. It is not contended, that because of the passage of this ordinance, its acceptance by the company and the construction of certain lines by the. latter, the borough is estopped from any proper exercise of the police power which belongs to it as one of the state’s agencies of government. On the other hand, the borough agrees it may not, under the guise of regulation, withdraw the franchise it properly conferred or establish conditions that make its reasonable use and enjoyment impossible,We turn then to' the ordinance itself to ascertain the essence of the grant, its extent, and the conditions, if any, under which the conferred right is to be exercised.
Section one'ordains “that the privilege be and is hereby *652 granted to construct, operate and maintain the necessary poles, wires, cables, and fixtures, together with the necessary supports, upon, over, along and under the streets, highways, footwalks, lanes and alleys of the said borough as may be necessary for the purpose” already quoted. It will be observed no particular streets or alleys are designated by name in this grant. But it does not follow from this that there was an absolute unqualified grant to the company of the right to enter upon every street and alley in the borough and locate its poles and string its wires upon and along them entirely at its own pleasure. For it is clear that although there was no limitation by name of the streets and alleys to be occupied, there was such limitation by description. The essence of the grant was the right to the company to transact the business for which it was incorporated within the limits of the borough, and to that end and for the accomplishment of that purpose, to occupy with its poles and wires such streets and alleys of the borough and such only “as may be necessary.” It is equally clear that it could not be successfully argued that any particular street in the borough was necessarily excluded from the burden of the franchise merely because it was not designated by name as one of those upon which the company was given the right to enter.
Even if the ordinance had contained no express reservation of the right to direct the precise location of the poles to be erected within the borough limits under the grant, it could be argued with much force that the exercise of such right was within the well-recognized limits of the police power of the municipality which the grant in nowise impaired or abridged. In American. Telegraph & Telephone Co. v. Mill Creek Township, 195 Pa. 643, the company had lawfully entered upon a highway and with the assent of the local authorities constructed its pole line thereon. Some time thereafter conditions became such that the public convenience of travel along the highway required the removal of the pole line from the location previously adopted to another, and the action of the local *653 authorities compelling such removal was held to be a proper exercise of the police power residing in them. In dismissing the company’s bill for an injunction to restrain such action, Judge Walling, before whom the case was heard, held that “a telegraph or telephone company by erecting its line of poles in a certain place in the highway with the express or implied assent of the road authorities, does not thereby acquire a vested right perpetually to maintain said line of poles in that particular location: and in after years if changed conditions render it necessary for the public good that such line of poles be moved to a different part of the highway, the road commissioners have the right in the proper exercise of their discretion to compel, such removal.” In affirming the decree dismissing the bill, the Supreme Court, in a per curiam opinion, said: “We are clearly of opinion that the location of the poles and wires of the plaintiff, company was a matter which was within the reasonable control of the road commissioners, and we find no evidence of any abuse of their discretion on the record. We affirm the decree upon the findings of fact and conclusions of law contained in the opinion of the learned court below.” See also American Tel. & Tel. Co. v. Harbor Creek Twp., 23 Pa. Superior Ct. 437. And the above-cited cases are clearly authority for the proposition that if the attempted regulation be within the recognized police power of the municipality, there is no proper place for interference by the courts unless the record exhibits an abuse of the discretionary power lodged in the local authorities. And so it was expressly declared by this court in Edgewood Borough v. Scott, 29 Pa. Superior Ct. 156.
But the ordinance now under consideration did expressly reserve to the borough, as one of the conditions on which the general grant was to be enjoyed, the right to direct and supervise the location of the poles of the plaintiff company within the borough. By the acceptance of the ordinance containing this condition, the company stipulated that it would submit to such direction and accept the judgment of the designated tribunal on the ques *654 tion of the location of its poles, always, of course, on the assumption that such judgment would be rendered in good faith and would not impose conditions that could fairly be held to be unreasonable or oppressive.
In 1910 the plaintiff company proposed to erect a short line of poles along one of the principal streets of the bor.oughknown as Park avenue.. The borough officials objected to the location of any poles at this time along said avenue, for the reason that it was desirable to keep at least ■one street of the borough free from pole lines, and that the section of the town into which the company desired to extend its lines could be easily reached by building along either one of two routes involving only the use of alleys. ■The company,- without having first obtained the consent •and approval of the street committee of councils for the location of-the poles on said Park avenue, set about their erection and were stopped by the police officers of the • borough. Thereupon the company filed this bill praying for an injunction to restrain any adverse action by the borough or its officials to the erection of such pole line, and upon final hearing a permanent injunction was en- . tered by the learned court below. From that decree the borough takes this appeal.
The third conclusion of law adopted by the learned trial judge was as follows: “There was no approval by (the street committee of the plan and location of poles and .wires- of the plaintiff company on Park avenue as con-templated by the contract between the parties.” Now ■ as we have already seen, the ordinance adopted by the borough and accepted by the company, which thus be- ■ came what the learned judge calls “the contract between the parties,” had declared “that the location of said poles ■ shall be made under the direction and supervision of the • street committee of the council of the borough aforesaid.” The learned judge below therefore rightly said: “We might have refused this injunction for the reason that the contract requires that the location of said poles shall be made under the direction and supervision of the street *655 committee of council .... and that the approval has not been had.” Explaining why such action did not follow he adds, “but the defendant borough does not defend on that ground.” This is assented to by the able counsel for appellant who states, in his brief, that the borough does not desire the case to be disposed of on the narrow ground that the approval of council had not been first sought and obtained. ■He rests his case on the broader proposition that, in refusing its approval to the locations selected by the company, the borough authorities have-not stepped outside of the limits of the power reserved to them by the law and their contract, nor so exercised that power as to impose unreasonable or oppressive conditions upon the company.
Under the authorities cited the action of the borough ■directing.the location of the new poles in the alleys, rather than on Park avenue, was, prima facie at least, within the well-recognized limits of the police power residing in .the municipality. It did not; deny to the company the right to extend its lines into the desired section of the .borough and thus increase its business or the revenue therefrom. The complainant has not been able to show that either of the alternative routes proposed by the borough presented such physical.ormechanical difficulties as would render construction and operation along either impracticable.
■The .evidence does disclose that some additional financial burdens would be cast upon the plaintiff company if it were forced to construct its line along one of the alley ■ routes rather than along Park avenue, but the evidence does not show how much this additional cost would be; that the conduct of its business, if the borough’s position be sustained, would, because of excessive cost of construction, result in a loss instead of a profit, nor anything else which to our minds would, convict the borough authorities of an abuse of discretion in their determination that under present conditions at least no pole line should be constructed on Park avenue.. The proper exercise of the police power of a borough or city often results in 'the imposition of financial burdens on the citizen and property *656 owner. The enforced construction of sidewalks of specified width and material, the compulsory1 connection of inhabited buildings with public sewers where the owner may have provided other dispositions, the creation of fire limits within which only buildings of certain materials may be erected, and many others, are familiar instances in which the property owner must, for the common good, bear burdens necessarily resulting from the proper exercise of the police power of the municipality in which he resides. But all or any of these furnish no ground for interference by the courts. In so holding we but follow, as we must, the doctrine of American Telegraph & Telephone Co. v. Mill Creek Twp., 195 Pa. 643, and the other cases cited.
We are not by any means to be understood as declaring that Park avenue can never be lawfully subjected to the burden of the franchise granted to the plaintiff company. Whenever it is shown that the description, by which in the ordinance the borough with the assent of the company indicated the streets that were to be included in the grant, has become applicable to Park avenue, an entirely different situation will arise. But as the record is now presented, we cannot say that the action of the borough officials complained of discloses any abuse of the power reposed in them, and therefore it cannot be held to amount to any impairment of the substance and essence of the franchise granted. When a case is presented from which it will appear that any proposed action of the borough will necessarily result either in a partial withdrawal of the grant already made or in the imposition of conditions that will destroy its reasonable enjoyment, the plaintiff may be in a position to invoke the doctrine of Com. v. Warwick, 185 Pa. 623, and kindred cases. But as the record now stands, we are of the opinion that the learned judge below fell into error in entering the final decree restraining the borough and its officers from doing the things complained of in the bill.
The decree is reversed and the bill dismissed at the costs of the appellee.